1  DANIEL C. STEIN         #250102
   dstein@bakermanock.com
2  ASHER S. ANDERSON       #317348
   aanderson@bakermanock.com
3  Baker Manock & Jensen, PC
   5260 North Palm Avenue, Fourth Floor
4  Fresno, California 93704
   Telephone: 559.432.5400
5  Facsimile: 559.432.5620

6  Attorneys for  DOHENY-VIDOVICH PARTNERS, a California general
                   partnership

7

8                    UNITED STATES DISTRICT COURT

9         NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

11 DOHENY-VIDOVICH PARTNERS, a          Case No.
   California general partnership,
12                                       **COMPLAINT FOR DAMAGES FOR:**
              Plaintiff,                 **1) CERCLA - COSTS RECOVERY**
13                                        **2) CERCLA - CONTRIBUTION**
        v.                               **3) CALIFORNIA HSAA –**
14                                        **CONTRIBUTION/INDEMNITY**
   HEWLETT-PACKARD COMPANY, a           **4) CONTINUING PRIVATE NUISANCE**
15 California corporation; HEWLETT-      **5) CONTINUING PUBLIC NUISANCE**
   PACKARD COMPANY, a Delaware          **6) CONTINUING TRESPASS**
16 corporation; HP, INC., a Delaware    **7) DECLARATORY RELIEF**
   corporation; VARIAN ASSOCIATES, a
17 California corporation; VARIAN
   DELAWARE, INC., a Delaware corporation;
18 VARIAN ASSOCIATES, INC., a Delaware   **DEMAND FOR JURY TRIAL**
   corporation; VARIAN MEDICAL SYSTEMS,
19 INC., a Delaware Corporation; the BOARD
   OF TRUSTEES OF THE LELAND
20 STANFORD JUNIOR UNIVERSITY, a
   California nonprofit educational institution;
21 and DOES 1 through 20, inclusive.

22            Defendants.

23

24

25           Plaintiff Doheny-Vidovich Partners, a California general partnership ("DVP" or

   "Plaintiff"), alleges as follows:
26
   ///
27
   ///
28

# NATURE OF THE ACTION

1.     This action arises as a result of hazardous substances, including trichloroethene ("TCE") (the "Hazardous Substances"), having been stored, treated, discharged, disposed of, and/or otherwise released by Defendant Hewlett-Packard Company, a California corporation ("Hewlett-Packard California") onto 620 and 640 Page Mill Road, Palo Alto, California (the "620 Page Mill Site") and 395 Page Mill Road, Palo Alto, California (the "395 Page Mill Site"), and by Defendant Varian Associates, a California corporation ("Varian California") onto 601 California Avenue, Palo Alto, California (the "601 California Site"), and leaching and/or otherwise migrating beneath and onto DVP's property located at 3225 El Camino Real, Palo Alto, California (the "Property").

2.     DVP, on information and belief and on that basis alleges, Defendant HP, Inc., a Delaware corporation ("HP") and its corporate predecessors occupied, and conducted manufacturing operations at, the 620 Page Mill Site from 1962 to 1986. During that time, Hewlett-Packard California caused and/or otherwise permitted the storage, treatment, discharge, disposal, and/or release of the Hazardous Substances onto the 620 Page Mill Site. On information and belief, HP and its corporate predecessors also owned, occupied, and conducted manufacturing operations at the 395 Page Mill Site from on or about 1942 to approximately 1994. During that timeframe, Hewlett-Packard California caused and permitted the storage, treatment, discharge, disposal, and/or release of the Hazardous Substances onto the 395 Page Mill Site.

3.     DVP, on information and belief and on that basis alleges, Defendant Varian Medical Systems, Inc., a Delaware corporation ("VMS") and its corporate predecessors occupied, and conducted manufacturing operations at, the 601 California Site from 1966 to 1991. During that time, Varian California caused and permitted the storage, treatment, discharge, disposal, and/or release of the Hazardous Substances onto the 601 California Site.

4.     DVP, on information and belief and on that basis alleges, during the times specified above, Defendant Board of Trustees of the Leland Stanford Junior University ("Stanford") owned the 601 California Site and the 620 Page Mill Site.

///

5.      On information and belief, the Hazardous Substances have leached and/or otherwise migrated from the 601 California Site, 395 Page Mill Site, and the 620 Page Mill Site (collectively, the "Sites") and contaminated groundwater underneath Plaintiff's property and/or the Property itself.

6.      On information and belief, Defendant HP, Inc. is the corporate successor to Hewlett-Packard California and has assumed all assets and liabilities, including the liabilities associated with the contamination of the 620 Page Mill Site and the 395 Page Mill Site and, as a result of migration of the Hazardous Substances, contamination of the Property, as alleged herein.

7.      On information and belief, Defendant VMS is the corporate successor to Varian California and has assumed all assets and liabilities, including the liabilities associated with the contamination of the 601 California Site and, as a result of migration of the Hazardous Substances, contamination of the Property, as alleged herein.

8.      As a direct and proximate result of the contamination caused and/or contributed to by Defendants, and each of them, Plaintiff, DVP, has incurred substantial damages, including but not limited to expenses and costs, money spent to conduct site investigations of the Property, extract soil, soil vapor, and groundwater samples, consultant fees, and implementation of mitigation measures and development conditions required by the City of Palo Alto and, on information and belief, the California Regional Water Quality Control Board, to remediate the presence of the Hazardous Substances on the Property. The need to implement remedial measures has caused delays and increased costs associated with DVP's multi-use development project, resulting in other losses and damages that DVP seeks to recover in this action.

9.      DVP brings this action under Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9607, as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 (1986) (hereafter "CERCLA") to, among other things, recover costs incurred and to be incurred by DVP to remediate the Property and otherwise respond to the storage, treatment, discharge, disposal, and/or release of Hazardous Substances on the Sites.

///

10.     Although DVP denies that it caused or contributed to the environmental contamination at the Property and denies that it is liable for costs incurred as the result of the alleged release or threatened release of Hazardous Substances at the Sites, if it is determined that DVP is liable for any costs, then DVP brings an alternative claim under Section 113 of CERCLA, 42 U.S.C. Section 9613, to, among other things, recover some or all amounts that DVP has incurred and may, in the future, incur as the result of the release or threatened release of Hazardous Substances from the Sites and/or the Property.

11.     In addition, DVP seeks contribution and/or indemnity under California Health & Safety Code Section 25363, to, among other things, recover costs incurred and to be incurred by DVP to remediate the Property and otherwise respond to the storage, treatment, discharge, disposal, and/or release of Hazardous Substances on the Sites. DVP also seeks damages for continuing nuisance because the contamination has interfered with DVP's use and enjoyment of the Property. Accordingly, DVP seeks to recover from HP Defendants and Varian Defendants compensation for the costs of abating the nuisance and damages for interference with the use and enjoyment of the Property. In addition, the conduct was a continuing trespass because it was a wrongful occupation of the Property. DVP therefore seeks to recover the value of the use of the land, pursuant to California Civil Code Section 3334, by virtue of HP Defendants' and Varian Defendants' wrongful occupation.

12.     Last, DVP seeks a declaration of the rights and obligations of the parties pursuant to 42 U.S.C. § 9613(g)(2), and 28 U.S.C. § 2201, binding in any subsequent action or actions to recover all further response costs incurred by DVP.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over the Defendants and the questions presented pursuant to Sections 101, 107 and 113 of CERCLA, 42 U.S.C. Sections 9601, 9607 and 9613, and 28 U.S.C. Section 1331. The Court has supplemental jurisdiction of the state law claims under 28 U.S.C. Section 1367.

14.     Venue is proper in this judicial district under 42 U.S.C. Section 9607 and 9613(b), and 28 U.S.C. Sections 1391(b) and (c). The Property is located in this district, the

1    Defendants reside in and may be found in this district, and the storage, treatment, discharge,

2    disposal, and/or release of the Hazardous Substances, and resulting damage, occurred in this

3    district.

4         15.    All of Plaintiff's claims for relief contained in this complaint arise out of the

5    same transaction and occurrence as the claim asserted under CERCLA.

6                              **INTRADISTRICT ASSIGNMENT**

7         16.    Assignment to the San Jose Division of this Court is proper under Civil L.

8    R. 3-2. The action arose in the County of Santa Clara because the Property is located in, and the

9    discharge, disposal, and release of Hazardous Substances occurred in, that County.

10                                    **THE PARTIES**

11        17.    Plaintiff DVP is, and at all relevant times commencing from and after 2000

12   was, the fee owner of the Property located at 3225 El Camino Real, Palo Alto, California.

13        18.    On information and belief, Defendant Hewlett-Packard California,

14   commenced operations on the 620 Page Mill Site in or about 1962 and on the 395 Page Mill Site

15   in or about 1942, and was, at those times, a corporation organized and existing under the laws of

16   the State of California.

17        19.    On information and belief, on or about May 20, 1998, Hewlett-Packard

18   California merged into Hewlett-Packard Company, a Delaware corporation ("Hewlett-Packard

19   Delaware"). As a result of the merger, Hewlett-Packard Delaware succeeded to all of the debts,

20   liabilities, and obligations of Hewlett-Packard California, including the debts, liabilities, and

21   obligations alleged herein, pursuant to an Agreement and Plan of Merger, the Delaware General

22   Corporation Law, and the California General Corporation Law.

23        20.    On or about October 19, 2015, Hewlett-Packard Company, a Delaware

24   corporation filed a Certificate of Amendment to the Certificate of Incorporation of Hewlett-

25   Packard Company with the Secretary of State of Delaware to change the name of Hewlett-Packard

26   Company to "HP Inc.", effective as of 11:59 pm, Eastern time, on October 31, 2015 (Defendants

27   Hewlett-Packard California, Hewlett-Packard Delaware, and HP are collectively referred to herein

28   as "HP Defendants"). On information and belief, HP continues to be organized and existing under

1  the laws of the State of Delaware. HP's principal executive offices are located in Palo Alto,

2  California.

3      21.    On information and belief, Defendant Varian California, commenced

4  operation on the 601 California Site in or about 1966, and was, at that time, a corporation

5  organized and existing under the laws of the State of California.

6      22.    On information and belief, on or about September 24, 1976, Varian

7  California merged into Varian Delaware, Inc., a Delaware corporation ("Varian Delaware"). On

8  further information and belief, as a result of the merger, Varian Delaware succeeded to all of the

9  restrictions, disabilities, debts, liabilities, and duties of the California corporation, including the

10  restrictions, disabilities, debts, liabilities, and duties alleged herein, pursuant to a Plan of

11  Reorganization and Agreement of Merger, applicable statutes of the State of California, and

12  applicable statutes of the State of Delaware.

13      23.    On or about October 7, 1976, Varian Delaware filed a Certificate of

14  Agreement of Merger with the Secretary of State of Delaware, pursuant to which it changed the

15  name of Varian Delaware, Inc. to "Varian Associates, Inc."

16      24.    On or about April 1, 1999, Varian Associates, Inc., filed a Certificate of

17  Amendment to the Certificate of Incorporation of Varian Associates, Inc. with the Secretary of

18  State of Delaware to change the name of Varian Associates, Inc. to "Varian Medical Systems,

19  Inc." (VMS), effective as of April 3, 1999 (Defendants Varian California, Varian Delaware,

20  Varian Associates, Inc., and VMS are collectively referred to herein as "Varian Defendants"). On

21  information and belief, VMS continues to be organized and existing under the laws of the State of

22  Delaware. VMS's principal executive office are located in Palo Alto, California.

23      25.    On information and belief, at all relevant times herein, Defendant Stanford,

24  has owned and leased the 601 California Site and 620 Page Mill Site to Varian California and

25  Hewlett-Packard California, respectively, and was, during that time, a nonprofit educational

26  institution, existing under the laws of the State of California. On information and belief, Stanford

27  continues to be organized and existing under the laws of the State of California. Stanford's

28  principal governance offices are located in Stanford, California.

26.     DVP is unaware of the true names and capacities of defendants sued herein as DOES 1 through 20, inclusive, because the Santa Clara County Recorder's Office was closed for public access due to COVID-19 and/or because the documents identifying the same are in Defendants' possession, and therefore sues these defendants by such fictitious names. Plaintiff will seek leave of this Court to amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the defendants, including but not limited to certain of DOES 1-20, (i) were owners and/or operators of the Sites when Hazardous Substances were disposed of thereon, (ii) contracted, agreed, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of the Hazardous Substances owned or possessed by that person or by another party or entity, at the Sites, and/or (iii) accepted any Hazardous Substances for transport to the Sites, or any of them, from which there was a release or threatened release,

## FACTS

27.     On or about January 13, 1955, Stanford leased the 620 Page Mill Site to Palo Alto Engineering Company, a California corporation ("PAEC"), for a period of ninety-nine years, commencing January 13, 1955 and terminating January 12, 2054. On or about October 31, 1962, PAEC assigned the lease to Hewlett-Packard California. On information and belief, Hewlett-Packard California commenced operating its business on the 620 Page Mill Site, pursuant to the lease, on or about October 31, 1962. On information and belief, Hewlett-Packard California ceased operations on the 620 Page Mill Site in 1986.

28.     DVP, on information and belief and on that basis therefore alleges, that in or about 1942, Hewlett-Packard California purchased and/or acquired fee title to the 395 Page Mill Site and commenced operating its business on the 395 Page Mill Site. DVP, on information and belief and on that basis therefore alleges, Hewlett-Packard California ceased operations at the 395 Page Mill Site in or after 1994. On October 26, 1999, Hewlett-Packard Delaware, as successor in interest to Hewlett-Packard California, transferred title to the 395 Page Mill Site to Agilent Technologies, Inc. a Delaware corporation.

29.     DVP, on information and belief and on that basis therefore alleges, that in or about 1966, Varian California either assumed an existing lease or entered into a new lease with Stanford, as the fee owner, for the 601 California Site. On information and belief, Varian California commenced operating its business at the 601 California Site, pursuant to the lease, in or about 1966. On information and belief, Varian California and then Varian Delaware, as successor in interest to Varian California, continued to operate its business at the 601 California Site until in or about 1991 when it ceased operations.

30.     In 2016, DVP began construction of a multi-use building project on the Property. During early phases of the project, DVP'a environmental consultant identified extensive TCE contamination in the groundwater located thereunder. As a direct and proximate result of Defendants' conduct, commencing in April of 2018, DVP incurred and will continue to incur substantial necessary response costs, within the meaning of Section 101(25) of CERCLA, 42 U.S.C. section 9601(25), consistent with the National Contingency Plan ("NCP"), 40 C.F.R. Part 300 *et seq.*, including expenses associated with investigating, characterizing, cleaning up, remediating and/or otherwise addressing concerns about the Hazardous Substance contamination under its Property. Significantly, there is no historical use and/or presence of any business that used, stored, or otherwise disposed of any Hazardous Substance on the Property. On information and belief, all Hazardous Substances within and underneath Plaintiff's Property, including groundwater and/or soil, are the result of leaching and/or migration of the Hazardous Substances from Defendants' Site and/or Sites, and/or from each of them respectively.

31.     DVP's use and enjoyment of the Property has been impaired as a result of the contamination and will continue to be impaired in the future. In addition, by storing, treating, and/or disposing of Hazardous Substances at the Sites which, on information and belief, have migrated, contaminated and/or otherwise came to rest on Plaintiff's Property after DVP purchased the Property in 2000, HP Defendants and Varian Defendants have been wrongfully occupying the Property, entitling DVP to remedies under California Civil Code Section 3334, including compensation for the value of the use of the Property measured by the greater of the reasonable

1  rental value or the benefits obtained by the HP Defendants and Varian Defendants by reason of the

2  wrongful occupation.

3         32.     HP Defendants and Varian Defendants, by acting and/or failing to act, have

4  directly and/or proximately caused and/or otherwise contributed to the contamination of Plaintiff's

5  Property from the Hazardous Substances. During the time it occupied and operated at the 620 Page

6  Mill Site and the 395 Page Mill Site, HP Defendants caused and allowed substantial amounts of

7  TCE to be stored, treated, disposed, and/or discharged, and/or otherwise released into the soil,

8  which has come to be located on the Property. During the time it occupied and operated at the 601

9  California Site, Varian Defendants caused and allowed substantial amounts of TCE to be stored,

10  treated, disposed, and/or discharged, and/or otherwise released into the soil, which has come to be

11  located on the Property.

12         33.     On or about March 31, 2021, DVP served a NOTICE OF INTENT TO

13  FILE SUIT UNDER CERCLA AND THE CALIFORNIA HAZARDOUS SUBSTANCE

14  ACCOUNT ACT pursuant to Health & Safety Code § 25363, subd. (d) by certified mail through

15  the United States Postal Service. Copies of the notice were mailed to the Attorney General of the

16  United States, Administrator of the Environmental Protection Agency, and the Director of the

17  California Department of Toxic Substances Control.

18         34.     On or about March 31, 2021, DVP served a written demand for payment in

19  the amount of $1,071,774.24 pursuant to 42 U.S.C. § 9607(a)(4) by certified mail through the

20  United States Postal Service. Copies of the demand were sent to all Defendants.

21  **FIRST CLAIM FOR RELIEF**

22  **Cost Recovery Under CERCLA Section 107**

23  **42 U.S.C. Section 9607**

24  **Against All Defendants**

25         35.     DVP re-alleges and incorporates the allegations contained in paragraphs 1

26  through 34, above.

27         36.     Each of the Defendants is a "person" within the meaning of Section 101(21)

28  of CERCLA, 42 U.S.C. Section 9601(21).

37.     The substances disposed of or otherwise released onto the Sites, including those identified in paragraphs 1 through 32, are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. Section 9601(14).

38.     Each of the Sites is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. Section 9601(9).

39.     Plaintiff is informed and believes, and on that basis alleges, that there was an actual or threatened release of hazardous substances into the environment at and from the Sites within the meaning of Sections 101(8) and (22) of CERCLA, 42 U.S.C. Sections 9601(8) and (22).

40.     Section 107(a) of CERCLA, 42 U.S.C. Section 9607(a), imposes strict liability without regard to fault on those persons who owned or operated a facility at the time hazardous substances were stored, treated, and/or disposed of, and also upon any person who by contract, agreement, or otherwise arranged for the storage, treatment, and/or disposal, or arranged for the transportation for storage, treatment, and/or disposal, of hazardous substances at a facility.

41.     Under CERCLA, "disposal" includes the act of "placing … any hazardous waste into or on any land … so that such … waste may enter the environment." Section 101(29) of CERCLA, 42 U.S.C. Section 9601(29).

42.     Hewlett-Packard California was operator of the 620 Page Mill Site at the time hazardous substances were stored, treated, and/or disposed of. DVP, on information and belief and on that basis alleges, Hewlett-Packard California also arranged for the storage, treatment, disposal, and/or arranged for the transportation for the storage, treatment, and/or disposal of hazardous substances at the 620 Page Mill Site.

43.     Hewlett-Packard California was owner and operator of the 395 Page Mill Site at the time hazardous substances were stored, treated, and/or otherwise disposed of. DVP, on information and belief and on that basis alleges, Hewlett-Packard California also arranged for the storage, treatment, disposal, and/or or arranged for the transportation for storage, treatment and/or disposal, of hazardous substances at the 395 Page Mill Site.

44.    Varian California and Varian Delaware were the operators of the 601 California Site at the time hazardous substances were stored, treated, and/or disposed of. DVP, on information and belief and on that basis alleges, Varian California and Varian Delaware also arranged for the storage, treatment, and/or disposal, and/or arranged for the transportation for the storage, treatment and/or disposal of hazardous substances at the 601 California Site.

45.    Stanford was owner of the 620 Page Mill Site and the 601 California Site at the time hazardous substances were disposed of, as alleged herein.

46.    Defendants, and each of them, therefore are liable within the meaning of Section 107 of CERCLA, 42 U.S.C. Section 9607.

47.    Defendants, and each of them, are jointly and severally liable under Section 107 of CERCLA, 42 U.S.C. Section 9607, for all response costs incurred by DVP, including costs associated with investigation, characterization, removal action, remedial action, and enforcement.

48.    Plaintiff did not cause or contribute to the environmental contamination at the Property and denies that it is liable for costs incurred as the result of the alleged release or threatened release of hazardous substances at the Sites. However, in the interest of an expeditious cleanup and acting in good faith, Plaintiff undertook actions including, but not limited to, conducting site investigations of the Property, extracting soil, soil vapor, and groundwater samples, dewatering, constructing a shoring system, installing of a vapor barrier, and implementing additional remedial measures in an effort to remove and remediate the environmental contamination at the Property. Plaintiff incurred costs in excess one million dollars, to be proven at the time of trial, according to proof, in the course of taking these actions. These actions and the costs incurred in taking them were necessary and are consistent with the National Contingency Plan.

49.    Plaintiff did not cause or contribute to the environmental contamination at the Property and denies that it is liable for costs incurred as the result of the alleged release or threatened release of hazardous substances at the Sites. However, if it is determined that Plaintiff is liable for any costs, then Plaintiff may incur future costs in response to the release or threatened release of hazardous substances from the Site.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

**SECOND CLAIM FOR RELIEF**

**Contribution Under CERCLA Section 113**

**42 U.S.C. Section 9613**

**Against all Defendants**

50.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 49 as though fully set forth herein.

51.     Plaintiff did not cause or contribute to the environmental contamination at the Property and denies that it is liable for costs incurred as the result of the alleged release or threatened release of hazardous substances at the Sites. However, in the interest of an expeditious cleanup and acting in good faith, Plaintiff undertook actions including, but not limited to, conducting site investigations of the Property, extracting soil, soil vapor, and groundwater samples, dewatering, constructing a shoring system, installing of a vapor barrier, and implementing additional remedial measures in an effort to remove and remediate the environmental contamination at the Property. Plaintiff incurred costs in excess of one million dollars, to be proved at the time of trial, according to proof in the course of taking these actions. These actions and the costs incurred in taking them are consistent with the National Contingency Plan.

52.     Plaintiff did not cause or contribute to the environmental contamination at the Property and denies that it is liable for costs incurred as the result of the alleged release or threatened release of hazardous substances at the Sites. However, if it is determined that Plaintiff is liable for any costs, then Plaintiff may incur future costs in response to the release or threatened release of hazardous substances from the Sites.

53.     Defendants are liable to Plaintiff for contribution under CERCLA section 113(f), 42 U.S.C.A. § 9613(f), for some or all amounts that Plaintiff has incurred and may, in the future, incur as the result of the release or threatened release of hazardous substances from the Sites, in that Defendants are liable for response costs under CERCLA section 107(a), 42 U.S.C.A. § 9607(a).

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

## THIRD CLAIM FOR RELIEF

### Contribution and/or Indemnity

### California Health & Safety Code, § 25363

54.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 53 as though fully set forth herein.

55.     Plaintiff is informed and believes, and on that basis alleges, that Defendants, and each of them, is a liable person as defined by California Health & Safety Code, § 25323.5 and is thereby liable in contribution and/or indemnity for response costs pursuant to California Health & Safety Code, § 25363, subd. (d).

56.     Plaintiff did not cause or contribute to the environmental contamination at the Property and denies that it is liable for costs incurred as the result of the alleged release or threatened release of hazardous substances from the Sites. However, in the interest of an expeditious cleanup and acting in good faith, Plaintiff has incurred costs necessary to respond to the release or threatened release of hazardous substances from the Sites consistent with the National Contingency Plan in an amount to be proved at trial, but believed to exceed one million dollars, in an amount to be proved at the time of trial and according to proof.

57.     Plaintiff did not cause or contribute to the environmental contamination at the Property and denies that it is liable for costs incurred as the result of the alleged release or threatened release of hazardous substances at the Sites. However, if it is determined that Plaintiff is liable for any costs, then Plaintiff may incur future costs in response to the release or threatened release of hazardous substances from the Sites.

58.     Defendants, and each of them, are liable to Plaintiff for contribution and/or indemnity under Health & Safety Code, §§ 25363, subd. (d) and 25323.5 for some or all amounts that Plaintiff has incurred and may, in the future, incur as the result of the release or threatened release of hazardous substances from the Sites.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

///

# FOURTH CLAIM FOR RELIEF

## Continuing Private Nuisance

### Against HP Defendants and Varian Defendants

59.     DVP re-alleges and incorporates the allegations in paragraphs 1 through 58, above.

60.     HP Defendants' and Varian Defendants' actions and failures to act created a condition and permitted a condition to exist that obstructed free use and interfered with the comfortable enjoyment of the Property.

61.     The condition substantially interfered with DVP's use and enjoyment of its land and therefore constituted a nuisance under California Civil Code Sections 3479 and 3480, and common law.

62.     The contamination migrated and spread over substantial portions of the Property.

63.     The nuisance was a reasonably abatable condition.

64.     DVP did not consent to the conduct of HP Defendants and Varian Defendants that resulted in the nuisance.

65.     The harm to the Property was serious, and HP Defendants' and Varian Defendants' conduct provided no significant public benefit in relation to the harm

66.     DVP has suffered harm as a result of the nuisance.

67.     HP Defendants' and Varian Defendants' conduct was a substantial factor in causing the harm to DVP.

68.     DVP therefore seeks to recover in this action all damages for the harm caused by the nuisance. Because the nuisance has been continuing in nature, DVP seeks all such damages sustained within the three-year period preceding the filing of this complaint, as well as damages continuing through the date of trial.

WHEREFORE, Plaintiff prays for judgment against HP Defendants and Varian Defendants as set forth below.

///

**FIFTH CLAIM FOR RELIEF**

**Continuing Public Nuisance**

**Against HP Defendants and Varian Defendants**

69.     DVP re-alleges and incorporates the allegations in paragraphs 1 through 68, above.

70.     HP Defendants' and Varian Defendants' actions and failures to act created a condition and permitted a condition to exist that was harmful to public health and/or obstructed free use and interfered with the comfortable enjoyment of the Property and/or created a dangerous condition and hazard to Plaintiff's property.

71.     The condition affected a substantial number of people at the same time.

72.     An ordinary person would be reasonably annoyed or disturbed by the condition.

73.     The seriousness of the harm outweighs the social utility of Defendants' conduct.

74.     DVP did not consent to the conduct of HP Defendants and Varian Defendants that resulted in the public nuisance.

75.     DVP has suffered harm that was different from the type of harm suffered by the general public.

76.     HP Defendants' and Varian Defendants' conduct was a substantial factor in causing the harm to DVP.

77.     DVP therefore seeks to recover in this action all damages for the harm caused by the nuisance. Because the nuisance has been continuing in nature, DVP seeks all such damages sustained within the three-year period preceding the filing of this complaint, as well as damages continuing through the date of trial.

WHEREFORE, Plaintiff prays for judgment against HP Defendants and Varian Defendants as set forth below.

///

///

**SIXTH CLAIM FOR RELIEF**

**Continuing Trespass**

**Against HP Defendants and Varian Defendants**

78.     DVP re-alleges and incorporates the allegations in paragraphs 1 through 77, above.

79.     Intentional or negligent acts of HP Defendants and Varian Defendants were a substantial factor in causing Hazardous Substances to enter the Property after DVP purchased the Property in 2000 and remain on the Property.

80.     DVP did not give permission for the entry of the substances upon the Property after DVP purchased the Property in 2000 or for the substances to remain on the Property.

81.     As a result of the continuing presence of the substances on the Property, HP Defendants and Varian Defendants have committed a continuing trespass.

82.     DVP has been substantially harmed by the continuing trespass.

83.     The trespass was reasonably abatable.

84.     Under Civil Code Section 3334, the remedy for a continuing trespass includes the value of the use of the Property for the time of the wrongful occupation, as well as the reasonable cost of repair or restoration of the Property to its original condition, and the costs of recovering possession. The value of the use of the Property is, pursuant to Section 3334, the greater of the reasonable rental value of the Property or the benefits obtained by the person wrongfully occupying the Property by reason of the wrongful occupation. DVP seeks all remedies available under Section 3334.

WHEREFORE, Plaintiff prays for judgment against HP Defendants and Varian Defendants as set forth below.

///

///

///

///

**SEVENTH CLAIM FOR RELIEF**

**Declaratory Relief**

**Against all Defendants**

85.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 84 as though fully set forth herein.

86.     An actual controversy now exists between Plaintiff and Defendant in that Plaintiff contends that defendant is liable to Plaintiff for cost recovery under CERCLA section 107(a), contribution under CERCLA section 113, and contribution and/or indemnity under California Health & Safety Code § 25363, subd. (d) for any response or other costs or damages which Plaintiff has incurred or may incur or be found liable for in connection with the environmental contamination of the Property. Plaintiff believes that Defendants contends in all respects to the contrary.

87.     A declaration of the rights and obligations of the parties pursuant to 42 U.S.C.A. § 9613(g)(2), and 28 U.S.C.A. § 2201, binding in any subsequent action or actions to recover all further response costs incurred by Plaintiff, is appropriate and in the interest of justice in that an early determination of this controversy will avoid a multiplicity of litigation.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth below.

**PRAYER FOR RELIEF**

**As to the First Claim for Relief:**

WHEREFORE, Plaintiff DVP prays for judgment against all Defendants, and each of them for:

88.     For a judgment that each Defendant is jointly and severally liable to Plaintiff without regard to fault under section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all costs incurred by DVP for response, including costs of investigation, characterization, removal action, remedial action, and abatement associated with the hazardous substances;

89.     Pre- and post-judgment interest in accordance with law;

90.     Costs of suit; and

91.     Such other and further relief as the Court deems appropriate.

1        **As to the Second Claim for Relief:**

2            WHEREFORE, Plaintiff DVP prays for judgment against all Defendants, and each

3    of them for:

4            92.     For a judgment that each Defendant is jointly and severally liable to

5    Plaintiff without regard to fault under section 113 of CERCLA, 42 U.S.C. § 9613, for all costs

6    incurred by DVP for response, including costs of investigation, characterization, removal action,

7    remedial action, and abatement associated with the hazardous substances;

8            93.     Pre- and post-judgment interest in accordance with law;

9            94.     Costs of suit; and

10           95.     Such other and further relief as the Court deems appropriate.

11       **As to the Third Claim for Relief:**

12           WHEREFORE, Plaintiff DVP prays for judgment against all Defendants, and each

13   of them for:

14           96.     All costs incurred by DVP for response, including costs of investigation,

15   characterization, removal action, remedial action, and abatement associated with the hazardous

16   substances and any and all consequential damages as allowed by statute;

17           97.     Litigation expenses, including attorneys' and expert fees, as provided by

18   California Health and Safety Code Section 25395.84;

19           98.     Pre- and post-judgment interest in accordance with law;

20           99.     Costs of suit; and

21           100.    Such other and further relief as the Court deems appropriate.

22       **As to the Fourth Claim for Relief:**

23           WHEREFORE, Plaintiff DVP prays for judgment against HP Defendants and

24   Varian Defendants, and each of them for:

25           101.    Damages resulting from the presence of hazardous substances on the

26   Property;

27           102.    Litigation expenses, including attorneys' and expert fees, as provided by

28   California Health and Safety Code Section 25395.84;

1      103.    Pre- and post-judgment interest in accordance with law;

2      104.    Costs of suit; and

3      105.    Such other and further relief as the Court deems appropriate.

4                          **As to the Fifth Claim for Relief:**

5      WHEREFORE, Plaintiff DVP prays for judgment against HP Defendants and

6   Varian Defendants, and each of them for:

7      106.    Damages resulting from the presence of hazardous substances on the

8   Property;

9      107.    Litigation expenses, including attorneys' and expert fees, as provided by

10   California Health and Safety Code Section 25395.84 and California Code of Civil Procedure

11   Section 1021.5;

12      108.    Pre- and post-judgment interest in accordance with law;

13      109.    Costs of suit; and

14      110.    Such other and further relief as the Court deems appropriate.

15                          **As to the Sixth Claim for Relief:**

16      WHEREFORE, Plaintiff DVP prays for judgment against HP Defendants and

17   Varian Defendants, and each of them for:

18      111.    Damages resulting from the presence of hazardous substances on the

19   Property;

20      112.    Compensation for the value of the use of the Property pursuant to California

21   Civil Code Section 3334;

22      113.    Litigation expenses, including attorneys' and expert fees, as provided by

23   California Health and Safety Code Section 25395.84;

24      114.    Pre- and post-judgment interest in accordance with law;

25      115.    Costs of suit; and

26      116.    Such other and further relief as the Court deems appropriate.

27   / / /

28   / / /

**As to the Seventh Claim for Relief:**

WHEREFORE, Plaintiff DVP prays for judgment against all Defendants, and each of them for:

117.    For a Judicial Declaration that Defendants, and each of them, are liable under CERCLA section 107(a) and California Health & Safety Code § 21323.5 and is liable to Plaintiff in contribution and/or indemnity under CERCLA section 113 and California Health & Safety Code § 25363, subd. (d) for all past, present, and future response costs and other costs which may be incurred by Plaintiff in connection with the Property including, without limitation, Plaintiff's reasonable attorney's fees;

118.    For an award of attorney's fees to the extent allowed by law;

119.    For costs of suit; and

120.    Such other and further relief as the Court deems appropriate.

DATED:  March 31, 2021                      BAKER MANOCK & JENSEN, PC


By: _____/s/ Daniel C. Stein_____
Daniel C. Stein
Asher S. Anderson
Attorneys for DOHENY-VIDOVICH
PARTNERS, a California general partnership

COMPLAINT FOR COST RECOVERY AND DAMAGES

**DEMAND FOR JURY TRIAL**

DVP hereby demands trial by jury on all claims so triable.

DATED:  March 31, 2021          BAKER MANOCK & JENSEN, PC


By:        /s/ Daniel C. Stein
Daniel C. Stein
Asher S. Anderson
Attorneys for DOHENY-VIDOVICH PARTNERS, a
California general partnership